We have three cases on for argument today but before we start I would like to extend a warm welcome on behalf of the court to our visiting judge, Senior Circuit Judge Richard Cudahy from the Seventh Circuit. Judge Cudahy is a very I actually had the pleasure of arguing before Judge Cudahy many years ago and I'm delighted no longer to be on the other side of the bench from Judge Cudahy. Judge Cudahy we're delighted to have you and thank you for helping us out. The first case for argument today is Blackboard v. Desire2Learn, number 2008-15-48. Mr. Wegner. Good morning, Your Honors. We have quite a few issues. We rely on the brief for most of the issues. I'd like to pinpoint two specific issues to drill down in depth. One is the issue of whether there is proof of a single act of infringement by Blackboard and the second is claim construction of the term user. Claim 36 is the generic claim which is the controlling claim. The other two claims are creation, establishment of software that creates discrete roles and characteristics. It's done in advance. This in Desire2Learn's operation is done by its software engineers in Canada. It's been in operation in Canada for several years before the grant of this patent and it always transmits its software to the United States. Counsel, we have such limited time. Would you mind starting with your claim construction argument instead of your infringement argument? I'd be very The claim construction argument, Your Honor, is best seen to drill down to our claim construction argument of user. User is ambiguously defined. It should be set forth as user, a common term, but instead it was ambiguously defined and when the jury asked for a more specific instruction and not given that at page 36 and 37, particularly 37 and 38, you see the dichotomy of what the testimony of the Blackboard inventors and their expert were versus what the patent itself discloses. Mr. Kane, one of the inventors, he said that the page 37, the invention's a single login user. The quote there in the bottom of page 37, the essence is a single user having multiple roles. Dr. Jones, the expert for Blackboard, bottom of page 38, says the user is assigned only one role in the old way. Now, the patent itself impeaches what they're saying. Course 1.5, which is the prior art, which is admitted to be the prior art, their own work. In fact, when you look in the patent, you'll find... Was course 1.5 actually admitted into evidence before the jury or is it just the case that the experts testified about it, relied upon it, and mentioned it in the course of the bases for their... I'm relying here on the expert's admission here, on the admissions here, Your Honor, and I would refer you in the blue brief to the patent text itself. I'm sorry, I guess I didn't understand. Was it before the jury or as an independent piece of evidence or is it the case... I see his head nodding. Yeah, I believe it was, Your Honor. Okay, because there seems to be some dispute in the briefs over whether it was or was not independently admitted into evidence or whether it was simply the subject of experts mentioning as part of the basis. My co-counsel says it was in and I will pitch you a specific citation on rebuttal. Now, I understand that you'd like the claim not to be limited to a single login, is that right? That's correct. And let me ask you this. It's come to my attention that there is a continuation that has been filed. I think you have, by motion, brought the issue to our attention or someone may have of a related case that's based upon that continuation. To what extent, Mr. Wagner, would we take into account statements made in a later filed continuation prosecution to inform our claim construction in this case? There's a split of authority on that point, Your Honor. As you know, the Janssen case from 1991 or 1990 talks about looking in related filed prosecutions. And there is one specific case where there is a subsequent prosecution after a patent has been granted where there's a two-to-one split opinion. I can provide that on rebuttal, the specific citation, where I think one, the majority said you can, you should be stuck with whatever interpretation you're given, even if it's later, and the dissent says, no, you can't. So there's a split in that authority, Your Honor. And do you view the statements made in the continuation as lending support to your position, the statements made by the patent? I have not studied the continuation file. This came as a shock to me. The complaint was just recently filed. We did not make a motion to have this considered. We, in our duty of showing related cases, referred to this case and filed a one-page letter noting that it's relevant because the main claim in this case says wherein the user is a single login or something to that effect. And that would certainly seem to be important, but we have not relied upon that. We don't want to go outside the record in this case. So then you think that it would be inappropriate in the later filed continuation to inform our decision on the meaning of terms since it wasn't part of the record? Do you think this is kind of a Rule 60 problem? What, how do you view this? I really don't know, Your Honor. We have this one case with two to one case saying you can use a subsequent prosecution for interpreting the claim. And I would have to do more detailed study of this to understand it, Your Honor. By the way, Mr. Wigner, and this applies to Mr. Breed as well, this is a complex case and we're not going to hold you strictly to the time limits. So don't feel that you have to suddenly go into overdrive here. Thank you very much. We'll proceed along as long as we feel that it's being useful. Thank you very much, Your Honor. So why don't you tell us, if you could, why it is that you think when it says each user is capable of having predefined characteristics indicative of multiple predetermined roles in the system that that doesn't mean access to multiple courses via a single login? Well, because you could log in twice and get multiple roles. But as I read the specification, it seems to me that really what was invented here is the idea of a single login being useful for accessing your role as teacher, your role as student, all of those things. I mean, I have umpteen little yellow stickies here on my patent that would designate different places where that message seems to be conveyed in the spec. Yes, but the problem with that, Your Honor, is that the single login is only mentioned twice. Login is only mentioned twice in the patent. And in the back of the patent, they talk about three-tier functionality. Let me find that for you, Your Honor. They mention that there is a first tier, a second tier, and a third tier. And it's only the third tier, if you look at the words third tier, you'll find that this is only in the third tier as an option for the advanced course manager that you have this single login feature. So the patent description corresponds to the claims, which are broader. Claim one was much broader, and then you have sub-claims, 24 and 25, that limit to the single login. What about the summary of the invention at column four, lines 52 through 63? That's certainly not suggesting that only in the third tier would this be utilized, this single login notion. In fact, this is the summary of the invention, not a particular embodiment disclosure, but rather a general summary of what they represent is the meat of their invention. Do you have column four? I will get to it, Your Honor. No problem. Column four about line 52. See how it talks about a single login, the user is then provided with access to all courses with which the user is associated after entry of the login sequence. Yes, and that does refer to this advantage, but here I found the three-tier functionality, Your Honor. If you look at just like you could have a Ford, Mercury, and Lincoln, three tiers of embodiments, they say the present invention is the first tier, second tier. Get to column 11, line 30, it says the third embodiment is a third-tier system known as the advanced course and portal manager. So this is a subunit of this, and it says only in line 36 it allows for a single login service delivery. So I think this corresponds to the claims where claim one and claim 36 are broad and not limited to the specific embodiment. I'd like to turn to the single important issue, and I'd like to, I think, I hope I can finish in about three minutes or four minutes. Before you turn to that, your contention is that the specification claims and the prosecution history are ambiguous, is it? No, I'm saying that they're ambiguous, aren't we supposed to lean toward upholding their validity? Well, first of all, claim construction is de novo, and I'm saying user, I read on Lexis to check the term user, I think 350 times on Lexis, and I don't see any definition, the login definition is only referred to twice. So I don't think, I think user should be used in the normal sense of a physical person, and it shouldn't be limited. So with respect to the single act of infringement, step A is always performed in Canada. This is the software engineers of Desire2Learn. There's ample testimony that the software is updated every few weeks in the modern systems, which of a web system, it's all done electronically. Now you're distinguishing, I take it, between the electronic formulation of the pre-determined roles, which you say is always done in Canada, versus the installation, which at least Ms. Decker's testimony seems to suggest is sometimes done on site. Is that a fair characterization? No, I'm not. I mean, I'm glad you're getting right to the nub of the issue. I wanted you to address it. You're exactly right. Ms. Decker's the heart and soul of this case, and the installation, everything is done in Canada. The web installation goes in Canada. Imagine in a modern era of computers, and if you have software to install and update every two or three weeks, you're not going to send an army of red-coated software mounties down from Canada to install each of the installations. It's going to be done on the web, pressing a button on the web. This is exactly how it's done. There's nothing whatsoever in the testimony about Ms. Decker that says anything to the contrary. There are two different teams we're dealing here with. The software engineering team, which creates the software, and then they have the implementation services team. The implementation services team is a good hands team which comes to meet the client. It's really about getting to know the client, building the client relationship. This is the testament for Hulu, which is uncontroverted, and Ms. Decker is the manager of this implementation team, so on one occasion she was in the United States at the time of an installation, but she wouldn't be coming down with a disc in her pocket to install the software. That's all done from implementation to deal with the client, and there's not one whit of testimony where it says that she installed it. She was there. She was present at the installation. Wait, but she says, tell me what's wrong with this interpretation of her testimony. Has aspects of the installation ever occurred when a person on the implementation services team was at a U.S. client site? Answer, yes. Yes, well that's exactly right. She's there. She's at the site. It doesn't say she installed it. Okay, but how her testimony ought to be interpreted in an infringement is a question of fact, and the jury heard this, and what you seem to be telling me is there are two different possible ways to interpret what she's claiming here, and while maybe I would personally agree with you that most likely you're right, most You're absolutely right, but all she says she was there. It doesn't say that she installed anything, and it's very clear if you have a major installation, you have an implementation team there to help the new client with his software. It's a matter of common sense in this age that if you have software from a central server dealing with many clients, you're not going to have Ms. Decker from the implementation team go down to a place to install a software. That just, it just makes no sense whatsoever. I don't disagree with what you're saying as a matter of practicality, as a matter of technology, but isn't her testimony necessarily open to the view that the jury must have reached, which is that this has occurred? No, it's not, Your Honor, because all she said she was there. The implementation team is supposed to be helping to facilitate the understanding of what's going on, and it's not, there's no way that you would think that there's, it's incomprehensible that one would think that the software would have been hand-delivered by Ms. Decker and then put on the machine. Well, just to follow up on Judge Moore's question, is there any clear, unequivocal testimony from D2L that invariably the installation was done from the remote site in Kent? Well, Ms. Fragula has testified that that the testimony, even for this domestic, self-hosted United States systems, the software is installed from Canada. In every case? I don't know if it's unequivocal that way, but now the next point, the final point I have, there must be proof of a single act of infringement. Now, let's look at the context of this case. The systems of desire to learn have been in existence for many years, and the patent only issued in 2006, and then a year later you have the testimony from Ms. Decker. She was asked and said that she'd been at the United States during an installation. The patent team never asked when she was there. It's their burden to confirm that the installation occurred before the patent was granted. That's not an act of infringement. So, I don't see how there is any credible evidence that pinpoints down that there was a single act of infringement before the patent was, after the patent was granted. Let me see if I understand, and I'm going back to my first question, and I'm not sure that I understood exactly what your position is with respect to this issue, but setting aside the question for the moment of whether the actual installation, let's assume that in fact the evidence was that Ms. Decker in some occasions went down to the site with a disc, as much as that may be counter to what you regard as sensible practice. She put the disc in. I thought your argument was, at least in part, that even that wouldn't be enough to constitute infringement because the establishing that each user is capable of having predetermined characteristics was something that was done not when Ms. Decker put the disc into Marquette University or wherever's system, but rather when the engineers programmed it back in Canada. Absolutely correct. Your argument then is, no matter what Ms. Decker might say, there is still another ground. That's correct. In which there is no infringement because step A was not done. Absolutely correct. Thank you. Thank you, your honors. We'll save your full rebuttal time, Mr. Wiggins. Thank you, your honors. If we could add five minutes to Mr. Freed's time, again we'll proceed more informally. We went five minutes over. Oh, that's right. Judge Morse corrected me. Since we're giving Mr. Wegner an extra five minutes of rebuttal and give Mr. Freed, if you would, 10 minutes extra time. Thank you. I'm not sure if that's a blessing or a curse. I was thinking the same thing, your honor. Thank you, your honors. Let me go to immediately to the infringement question. I'll get to the claim construction issue. Okay, I'll start with the claim construction issue. The claim construction issue is in part a red herring. Why do I say that? I say that because the single login feature is in this claim, even if you adopted their claim construction. So you're saying, let me see if I can put it in my words and you tell me if this is wrong in terms of what you're saying. You're saying user doesn't matter, what we call a user. What matters is, does the phrase establishing that each user is capable of having predetermined characteristics indicative of multiple predetermined roles contemplate that that can be done without having to go out of the system and log back in? Almost. Okay, good. Almost. Get me the rest of the way. The rest of the way, we have to read the rest of the claim. Pardon me. 36A has been interpreted and it's unchallenged. User is challenged, but the rest of 36A is not. Without a doubt, 36A requires that the user has a capability of multiply assigned predetermined roles. Regardless of how user is defined, part of the construction of 36A is that there's a capability of multiply assigned predetermined roles. Right, but that can be accomplished with multiple passwords. No, and I'll tell you why. You need to read B3 and read it closely. B3 requires allowing access, how? According to the established roles, plural roles, for the user according to step A. That puts the nail in this issue because you have to allow an access according to the established roles according to step A. Why doesn't that just mean according to the established roles, whether the role is teacher or student, not necessarily teacher in one class, student in another, but teacher in the same class versus a different person who is student. Because that's what the patent teaches me when I read it. The patent teaches me that teachers have access to certain things and students have access to different things and administrators could have access to yet different things altogether. So why isn't B3 exactly that? Because B3 talks about access and it's that access that has to give you according to your roles. So when you get into the everything that's available to you according to those roles, it's one access according to roles according to the capability of A. There's two according to's in B3. So it's access according to roles according to A. Are you attaching significance to the fact that roles and users in B3 are plural? No, the roles is plural. The users is too. Users is each user the same as A. It is Are you attaching significance to the plural roles? The plural roles, I believe that's correct. Because if it said roles of each user, that might be different, but it says roles for the users. No, it says established roles, your honor, according to step A. In other words, roles where there's a capable of multiple roles for each user. So that's why I said there's two according to's in there. It's access according to the roles according to step A. Yeah, but you keep leaving out what Judge Bryson is pointing to, which is very compelling, because it says for the users, plural, according to step A. So the multiple different people who will be utilizing the same system or the multiple different people who will be users of this system in a particular course, then according to step A. I don't see it as conclusively. The reason I see it that way, your honor, is because, and I'm not trying to leave out the plural users, but it's users and it says according to the roles according to A. If you go back to A, each user must have the capability of multiple roles. That's part of the construction, it's part of the claim. How can you have an access according to A unless you have access to those roles? Let me understand one thing. Are you then suggesting that the language in A alone, forget about this B3, which maybe I agree, maybe I don't, are you suggesting the language in A alone doesn't convey the single login limitation? It's only when the claim is read in its entirety that we get it, but you're not suggesting that the word user, capable of predefined characteristics indicative of multiple predetermined roles, that that language standing on its own necessarily incorporates the single login, are you? I'm just trying to understand. Your honor, I believe all the roads lead to Rome here. I think that is enough and that's what I kind of interpreted too. That's why I said it's a red herring, because if that's not enough, these other things are, is what I'm saying. Okay, so you think A is enough. So let's go through this step by step. The language in A that I just quoted to you, each user is capable of having predefined characteristics indicative of multiple predetermined roles, is identically present, word for word, in claim number one. Claim number one then has a dependent claim, 25, which adds the single login limitation. So given that you have identical word for word language between claim one and claim 36, and yet they still felt the need at the time of filing to include this dependent claim, at the time they filed claim one, it wasn't a later added on afterthought, they felt that they had to add the single login as a dependent limitation. Why doesn't the doctrine of claim differentiation suggest that the identical language in claim one and claim 36 therefore doesn't include that limitation? So I have three answers to that. The first two probably aren't going to be satisfactory, because you've already jumped to the third point and said that claim one is relevant. But the first answer is claim differentiation is a tool and not a rule. It doesn't trump a proper claim construction. The second answer, in addition to being a tool and not a rule, claim 24, the focus of the differentiation argument, doesn't depend from claim 36. But you've already said I should make the assumption that we'll just look at claim one and claim 24. But you are correct that the language is identical. Therefore, the fact that there's not a direct dependency doesn't, it seems to me, answer the point that Judge Moore was raising. The third answer is the answer is there's been a misconstruction of what claim 24 is all about. Claim one, you'll notice, requires user computers associated with a user of the system. Now, a user by Judge Clark's construction would be somebody who's logging into such a computer with a username and password. But nothing in claim one forecloses the ability to log on otherwise, to log on for a different web interface that's not a computer that's associated with the user, a user computer at a university where each person has their own computer and that's the way they log in. So claim one is kind of open. You have to have a user computer, but it doesn't force the login. Claim 24 comes in at that point and says, no, according to claim 24, the login to such user computer is a requirement for access. In other words, according to claim 24, the only way you can get access to your course files is through your user computer. If you look at claim 24... Well, it's actually claim 25 that seems to me to be a bigger problem. I think not. That's the single login claim, right? No, I don't think so. You don't think it is a single login? I think claim 24 is and claim 25 are. The difference between claim 24 and 25 is claim 24 makes sure that you have to have multiple access to multiple roles, but not to everything. Claim 25 says all, and that's the distinction between claim 25 and claim 24, your honor. They're both single logins. Claim 24 will give you a single login to multiple roles, but only through a user computer, and that's the most important thing because that's what makes it non-redundant to what is already in the construction. Because now you can have only through the required. You're required, not you can. You are required to access your stuff through that user computer. That's the only way you can get into the system. That's what claim 24 says. Claim 1 doesn't say that. Claim 36 doesn't say that. You may or may not have to have the username or password depending on whether you agree with Judge Clark, which by the way, I'd like to address Judge Clark's determination here and why it's right, and I do believe, I do say, I'm not saying here that you should not have a username and password in the construction. I think that's the proper construction. The fight below was whether this is just a person or not a person. If you look at column 22 lines 1 through 3, you will see there in one other place that, well, column 22 lines 1 through 3 says, the create user link displays a webpage that will enable the instructor to create a new user account and enroll him in the course. User account, enroll him in the course. Column 27 line 24 says, once a user is created, the manage user webpage allows listing modification and or removal of users. I'm sorry, what line was that? Column 27 line 24. In the first one, you're talking about a new user account and enrolling him in the system. In the other one, you're talking about creating a user. As good as these machines are these days, they can't create people. The bottom line is this patent is using the word user to talk about somebody who is using a user account. A user isn't just any person on the street, but it's someone who's using a user account in the very words of the patent. They talk about a user account and enrolling him in the system. They talk about creating a user, not creating a person. They're creating a user account. This twinning of user and user account is what caused Judge Clark to correctly split the baby because the parties were on opposite sides of the spectrum. They just wanted it to be a person, that's it. Blackboard argued, no, no, no, no, it should just be limited, very, very narrow. He said, no, it's a person who uses an account, namely a person who interacts with the system by logging on with a username or password. That's why he got to the proper construction. Could I ask you to talk with me for a few minutes about the continuation, the continuation in this case of this patent. Are you familiar with it? I'm familiar with its existence, Your Honor. I'm not familiar with its substance. Wow. How could it be that neither of you are familiar with it when it is directly on this point in its entirety? They added this exact claim with this exact language and then they went in and added in response to a rejection by the examiner, in response to a single login by the user providing access to the user to at least two courses for which the user is entitled to a level of access. Then in their remarks section, they went on to explain how the very language that you point to in claim one and claim 36 doesn't address that but rather pertains to the multiple different roles that a teacher and a student could have and that this new limitation will add the single login, which is otherwise missing from the claim. It's the most damning of continuation type remarks I could imagine. I was fully prepared when I came in here thinking, of course, these two esteemed patent attorneys are going to be very familiar with this and tell me, and I thought the whole battle would be over whether I'm allowed to rely on it or not, but I didn't for a minute think that neither of you would have read it. Well, I can address the last part, the reliance. It's outside the record, Your Honor. It's not part of this case. So I don't think it can be relied on. As a matter of law, though, claim construction, when we construe statutes, for example, we will look to the same language as it appears in other statutes all the time. That's not part of the law. I guess I don't know what to do with this continuation information. I think that makes the most sense. I think if you don't mind, I'd like to ask each of you, limited to five pages, single space, within 10 days to file with the court supplemental briefing on what, if any, import the continuation application and the statements made during that prosecution ought to have on the interpretation of the claims here. I mean, you can address Rule 60. You can address the language used, whatever you think would be helpful for the court to try and figure out what to do. One question that might be pertinent is, with respect to the record issue, is whether this material is judicially noticeable. Well, Your Honor, maybe I'll move briefly to the infringement question and then briefly to our cross-appeal. Can I ask you to address anticipation before you go there? Sure. Okay. So I've been reading all of the different testimony and everything, a laborious task. The one thing that I took away from it was, and I want to make sure I understand this, with regard to Courts Info 1.5, CERF, and IMS, the dispute seems to revolve, for anticipation purposes, entirely around claim construction. And I say this by meaning to suggest that I don't see, for example, your experts suggesting that there are a whole slew of limitations present in the claim that aren't present in the prior arc, but rather it all sort of hinged on the single log-in. Is that your understanding? No, I wouldn't agree with that, Your Honor, for two reasons. One is that's a burden-shifting technique that was very cleverly adopted by our opponents on appeal. They have the burden on anticipation to take the arc and apply the claim to the arc. They can't say that because our expert testified as to one thing, they somehow satisfied their burden as to the rest of the court. Dr. Jones, I remember actually going through the limitations in the testimony, creating a prima facie case of anticipation, it seemed to me. Am I misunderstanding what occurred? I don't think Dr. Jones would have been. Wasn't it Dr. Jones that did it? Well, Dr. Simmons is their expert, and Dr. Simmons did very little, and in fact, the judge below made it acknowledged that the jury would have been entitled to find his entire testimony not credible. Now, it's very rare that you'll get that fondly, but whatever he did say, that was a credibility determination, and the jury was within disbelief of every word he said. Based on the documentary evidence that was before the jury, what limitations other than the single log-in are not found in either course info 1.5 or cert, for example? Well, I think the combination, if you say single log-in, and you know I get to single log-in in many different ways. I know you do, but let's assume that it's not, we don't agree with you on any of your various ways of getting to single log-in, and that we construe claim 36 as not requiring a single log-in. In that event, does course info 1.5 and or cert read directly on claim 36? Your Honor, I think we would be, at that point in time, arguing some of the sublimitations in C and D as to what course files means, and whether it has to have multiple courses during a single interaction with the system, and that would be the argument as to whether or not those things are single during a single access where they only get one course, and I think there's room to argue that in C and D... If I recall correctly, I thought CERF did have multiple courses. What CERF didn't have was multiple roles, right? Am I right about that? You're right about multiple courses, Your Honor, but I don't think you're right about them being available during a single access. I think the discussions below were not clear at all that all those things were available during a single access. Certainly, I didn't see any clear and convincing evidence on that point, but again, this is a burden-shifting technique. It shouldn't be our burden to negate anticipation. They never made these presentations to the jury. They never argued these things to the jury. They never read the claim on it to the jury. Well, here's what CERF... I think I mean CERF. Yeah, CERF says... This is 7333 of the appendix. If you assign one instructor to teach multiple courses, the instructor will be able to use the switch courses option on the instructor panel to work on any of the courses. Presumably, that's on a single login, right? Similarly, if you enroll a student in more than one course, the student will be able to work on different courses by using the switch courses feature that appears on the student panel. Again, all that says is you're able to switch courses, Your Honor. I agree with you that it implies... It sounds like single login. It may require you to do something in addition to hitting the button that says switch courses. You may have to start from scratch once you switch courses. It's unclear. I think that's... I think it's a stretch. I think it's a stretch, but again, it doesn't say it for anticipation purposes. So again, I think the single login is clearly a distinction for anticipation purposes, and I think the single login is a distinction for obviousness, but I'd like to make one other point about anticipation and obviousness. There's a very serious deficiency in this entire appeal over art. The entire 50A motion, not the 50B motion, because I don't think a 50B motion stands on its own. The entire 50A motion consisted of I would like to move for JAMAL on anticipation. I would like to move for JAMAL on obviousness. The rules require that you specify the law and the facts that entitle you to judgment. There was absolutely not even lip service paid to that rule. Now, the argument is that the judge cut him off. I don't think the record supports the judge cutting him off, but they followed up with written 50A motions on infringement that had law and facts in it. They never followed up on art, anticipation, or obviousness with law and facts. I don't think they can appeal art in this. I think there's been a complete waiver by a complete failure to comply with Rule 50A, but again, on the merits, I don't believe there's for the single log-in reason and the one that you and I agreed is a stretch, but I think it's a stretch that's appropriate to make when it comes to the burden of proof of clear and convincing evidence on anticipation. So now briefly on the infringement issue, because I think it's important to keep this focus. An appeal from a denial of JAMAL requires the affirmance if any of our infringement theories is supportable, and the one that they kind of refuse to acknowledge and look at is the inducement or contributory infringement to self-hosted schools, when the self-hosted school is the complete infringer. Not the ones that they're hosting, but the school itself is self-hosted. Now, when you get to the contributory and inducement of infringement, there is, unlike most other cases, there's no argument here about scienter, no argument about the details of all the little nitty-gritty of 271C. None of that's raised on appeal. So the sole issue then becomes whether the self-hosted schools perform these steps. Now, with all due respect, and I know every time anybody starts one of those things, you know how that goes, but I have to say it here. This assertion that they're the only ones who perform step A and they only do it from candidate is directly refuted by their own expert, Dr. Simmons. Let me quote, and this is on page, record page 6275 and 76. This is a quote from Dr. Simmons. It appears that step A, and that's the one we've been talking about, it appears that step A regarding assigning multiple user roles to a single user would be actively performed by an administrator type person at the university. Now, there's their own expert saying that it's performed by the administrator at the university. End of story. Where exactly are you on 6275? Do you know? I'm just trying to follow you. It's a manuscript page, so it's just to keep up with you. Right now. In 1922, no, excuse me, that's not it. I'm reading from the deposition at that point on line 10 of 1922, is that what you're? I think so. I see, so you're talking about the question, but the installation was at the customer's in the United States, right sir? No, no, no, no. That's not the portion. 6276, page 1925, line 11 plus. It started, the whole column, we started at 6275. The 6276, manuscript page 1925, lines 11 plus. In analyzing claim 36, it appears that step A regarding assigning multiple user roles to a single user would be actively performed by an administrator type person at the university. So, I guess, what am I, take me back now because I've lost track a little bit. What is it that you're saying I should take away from this submission? Their assertion that this can only be performed by them and from Canada is simply wrong. It's performed right in the United States at the university by administrators and there's a statement by their own expert that it is. Now, the argument about the single infringement, there was multiple submissions of self-hosted schools occurring after the state of infringement. Now, we're here in a situation where all reasonable inferences have to be drawn in our favor. Everybody agrees to that, including the other side. So, with that kind of testimony and with the submission of many, many, many self-hosted schools that occurred after, the reasonable inference is that it happened exactly like their own expert said it happened, which is an infringement where they conduct, they perform that step, 36A specifically says. They perform 36A and there's no challenge to the other aspects of inducement or contrib. End of story. All the rest of the claim elements are met by their own chart on page 59 where they say the university does every one of the rest of the claim elements. If you look at their chart, they acknowledge that for self-hosted schools, the university performs every one of the rest of those claim elements. They only challenge A. Now, they do make a big deal, Your Honor, about the fact that they're different users and somehow or other that creates a divided infringement, if you will. That's the term of art these days in the legal community, but that's not so. Their own licenses at page 1375 of the record, their own license treats 13157 of the record of University of Iowa self-hosted, feed based on use of the product by all faculty, emeritus faculty, staff, students, and other learners. They're treating those all as one. That's the licensed entity that's for both self-hosted and hosted. So we have a single infringement by universities that is induced or contributed to by them of every step of that claim. And A is the only element that they're challenging? A is the only element that they challenged. Okay. I'm with you completely. I understand now. So that's the end of the story on that. I would like to move now to the cross appeal. And briefly, the faulty consideration of the function is the fundamental error below. That's why this claim was held to be indefinite for failing to satisfy 112.6. The means for assigning carries with it a function in the claim itself that is assigning a level of access to and control of each data file based on a user of the system's predetermined role in a course. The judge below and the magistrate below treated the function as if it were designating the type of file. That's not the function of the claim. Let me see if I understand the scope of your contention here. And let me offer you up a hypothetical. Suppose that I have a computer-based system which performs all of the limitations of claim one. And we're focusing then on the function of assigning a level of access. And suppose my computer-based system admittedly performs that function. Do I infringe without regard to whatever the mechanism that I employ to perform that function? The answer is no, for two reasons. Number one, that function isn't just assigning a level of access, but it's a level of access to and control. No, I'm saying I'm performing. I use that as an argument. I'm performing that whole limitation, the means limitation. Give me an example of some computer-based system that would not infringe, notwithstanding that it would perform that function. One that doesn't use the disclosed structure or an equivalent thereof. Well, the disclosed structure, it seems to me, and here's the point of my question. It looks to me as if the disclosed structure is simply a way of describing in noun form the function. In other words, it's like saying a car means for braking in a vehicle as one of the limitations. And you define the means plus the structure that you say is assigned to that means plus function as anything that affects braking, including sticking your foot out of the car and stopping the car. If that's true, then I think we can agree there's no real structure. Well, it's not true, and here's why it's not true. The structure disclosed here is the creation of the access control list. You may be able to carry out that function in ways other than creating an access control list. The computer, the operative disclosure is at specification column 9, 37 through 45. And the disclosure here says the manager 51, the ACM, creates an ACL, an access control list, for one or more subsystems in response to a request from a subsystem to have its resources protected. Some subsystem says, I want my resources protected, and now the function comes into play by the creation of this access control list. And the access control list is the actual creation of the access control list. That's the algorithm, the creation of that. And the spec says how you do it. It says you get education support system 100 to provide multiple levels of access restrictions. It goes right on to say this. That's exactly the function. No, it's not. That's just another way of articulating the function. No, no, no. That's the feed to the algorithm, which is the creation of the access control list. The actual algorithm here, your honor, is the creation of the access control list. You may be able to carry out this whole function without creating an access control list. You may find lots of different ways of doing it. But if you do it with an access control list or an equivalent of an access control list, you then infringe this patent. And that's the structure. But the court below never got there, your honor. The court below never got there because they took a side trip and said that the sole function here was designating the type of file. And they said there's nothing in there that shows me who designated the file. Well, the predicate was wrong. How the file gets designated or who designates it is not part of this claim. It is the assigning of the access based upon the predetermined will. And it's done by an algorithm that says create yourself an access control list. Now, how you get that algorithm is you pull in this information from the education support system 100. Which is the entire system. Well, 100 is just, if I recall, figure 1. 100 is just a description. It is. You don't get anything out of it. Figure 39 actually says where things are in a little bit more detail. Figure 1, you're right. 100 is the whole electronics. But it is the part of it that has the access restrictions buried in it. That's the part you have to tease out of it. How exactly does designation relate to the function? Pardon? How exactly does designation relate to the function as you described it? There would need to be one, but it's not part of the function. I hate to say it, but it's kind of like to create a semiconductor. You've got to have the sand. You've got to get the sand. Where you get it from, it doesn't matter. You've got to have the sand. It relates in that sense because you've got to get the silica to make the semiconductor. But that's what it is. Somebody has to have made a designation of some sort. Now, any attack on whether we disclosed enough on that is a disguised enablement attack, which again was waived. They never made an enablement attack. And by the way, they couldn't because there's a disclosure at columns 18.5 through 12, 17.40 through 49, and 18.17 through 26 that has specific disclosures of how a designation is made. You're saying designation is sort of like a light plug that you plug into? External to the rest of the function? It's something you have to have before you can create the ACL. Something you have to have. But this patent tells you three ways to do it. The first one talks about posting documents to define the course document entries. But two of the ones talk about adding and posting announcements. So when you go through the steps that are required in the patent at 17.40 through 49, when a teacher or a student goes through that, they've made that designation. They have to make it because they add the announcement and then they post the announcement. And 18.17 through 26 is adding and posting assignments. So the sum and substance of this is that when you start out with the wrong function, you're going to get the wrong answer. But even here, if you look for the designation or the actual designating type, I've given you three disclosures of where types were designated by users of the system. Okay. I think we'd better thank you for your indulgence at this point and move to the rebuttal. Mr. Wigner. Thank you. Thank you, Your Honors. First, I'd like to go back to this page 6276 and this quoted mission by our technical expert, Simmons. At the top left, this is page 1925. He says, it appears that some of the administrator performed some of the steps. Now you go to the bottom of that page, page 1926. He explains what he means. He's talking about the assigning sign-ons would definitely be the administrator of the university. So this is not a legal expert. This is a technical expert and he's explaining what he means by that. With respect to the question of a later continuation patent, I apologize, Your Honor, for not being prepared to argue that. I was staying in the record. I'm very pleased to present the five-page argument you'd like to have. Also, the case I was thinking of is Microsoft versus Multitech Systems, 357 Fed 3rd, 1340 at 1350, where the majority says that even though this patent had already issued, we think that it is not unsound to apply the same interpretation of that patent. We take the patentee at his word and will not construe the scope of that patent's claims more broadly than the patentee itself clearly envisioned. Now, in all candor, there is a two-to-one opinion. There's a dissent at page 1357, which makes a very strong argument the other way. I don't claim to have done comprehensive legal research on this point. This is outside the record, but that's there. Now, just to be further candid of what's going on, why was this suit dropped on us at this late date? There was a contempt decision where the court refused to enjoin a desire to learn, and I think that goes part and parcel with that. If you'd like us to address that also, with five pages, we're pleased to do that. I don't know whether that helps us or hurts us, Your Honor. So, counsel, suppose that, Judge Bryson asked a question of Mr. Freed, suppose that we were to find in your favor and against him on the claim construction issue of single log-in. Tell me, in your view, what that means that we would do with regard to the anticipation arguments that were made regarding course 1.5 and the SIRF reference in particular. Is that something that we would decide, in your view, as a matter of law, or is it something that would necessitate a new trial? I think it's a matter of discretion for this court. I think the Finisar case says that you can make a decision here if you wish, or you can remand the case. That's your discretion, Your Honor. But you believe that all of the expert testimony supports the notion that all of the other claim elements, with the exception of single log-in, was, in fact, presented to the jury? Yes. Thank you, Your Honor. Thank you. Since there was no responsive argument on indefiniteness, there won't be any need for a rebuttal on that issue. So that terminates the hearing. So it was a blessing and not a curse to get the expert testimony. I suppose that's a judgment you can make. Very well. Thank you. The case is submitted. Thanks to both counsel.